United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JOHN HERNANDEZ, *et al.*,

    Plaintiffs,

v.

KEVIN BROIN, *et al.*,

    Defendants.

No. C 11-2397 SI

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

On September 22, 2011, the Court held a hearing on defendants' motion to dismiss the first amended complaint. After the hearing, the parties submitted supplemental briefing on the question of whether the statute of limitations has run. For the reasons set forth below, the Court GRANTS defendants' motion to dismiss plaintiffs' claims against the County, and DENIES the balance of defendants' motion to dismiss.

## BACKGROUND

**I.    This lawsuit**

This lawsuit is the latest in a series of lawsuits filed by plaintiffs arising out of the death of their son.[1] The first amended complaint alleges that on August 22, 1997, plaintiffs' son, five year-old Forrest Hernandez, died after ingesting a small amount of water from Muir Mill Creek in Mendocino County.

---

[1] Pursuant to Federal Rule of Evidence 201, defendants seek judicial notice of numerous pleadings and court documents in plaintiffs' other federal and state cases. The Court GRANTS defendants' requests for judicial notice.

FAC ¶ 1. Plaintiffs allege that their son died because the creek water that he drank was contaminated with toxic chemicals. *Id*. ¶¶ 2-3.

The complaint alleges that defendant Kevin Broin, who was employed by Mendocino County as its sheriff and coroner at the time, "engaged in an unconstitutional coverup of the cause of death of Forrest Hernandez." *Id*. Specifically, plaintiffs allege that Broin and other unnamed individuals (1) performed an inadequate autopsy and an unauthorized necropsy, and failed to properly document either; (2) ignored plaintiffs' repeated requests to test Forrest's preserved body parts, vomit samples, and water samples from the creek, for exposure to toxic chemicals; and (3) destroyed evidence (Forrest's preserved body parts, vomit, and water samples) without notifying the family or ever having conducted proper testing. *Id*. ¶¶ 3-4.

Plaintiffs allege that "another aspect of this coverup was the insistence by Kevin Broin and Does 1-10 that the Plaintiffs were somehow responsible for the death of their son." *Id*. ¶ 5. The FAC alleges that "[d]espite their repeated requests for testing, the only testing conducted by Kevin Broin or his subordinates was to take blood samples from the Plaintiffs themselves on a baseless hypothesis that they were methamphetamine users." *Id*. Plaintiffs allege that this testing was "done to threaten, intimidate and/or coerce them into stopping the Plaintiffs from exercising their rights to petition the government to stop conducting an inadequate investigation and to conduct proper testing for the nature of what poisoned their son." *Id*.

Plaintiffs also allege that defendants refused to investigate "the most obvious source of poisoning – the well-known illegal dumping activities that had been conducted by the Remco plant." *Id*. ¶ 6. The complaint alleges that the Remco plant "was the largest industry in Willits, employing hundreds of workers and discharging huge amounts of hexavalent chromium and solvents and other products containing volatile organic compounds." *Id*. Plaintiffs allege that Broin "was well aware of the existence of Remco and its dumping activities in various portions of the Willits community," and that Broin "refused to look at Remco as a suspect of having poisoned the water, even though he agreed to take water samples." *Id*. The complaint alleges that plaintiffs filed a wrongful death lawsuit against the

Remco plant owners, and that plaintiffs lost that lawsuit "[b]ecause of the coverup and evidence destruction." *Id*. ¶ 7.

Plaintiffs filed this lawsuit on August 4, 2010 in Mendocino County Superior Court. *See* Notice of Removal. The first amended complaint alleges one claim pursuant to 42 U.S.C. § 1983 against Broin, the County of Mendocino, and Does 1-10, for unconstitutional denial of access to the courts. The Section 1983 claim alleges that "[i]f the Defendants had not conducted an unconstitutional coverup of the Remco plant's activities, which included the destruction of evidence and refusal to conduct a proper investigation as set forth above, the Plaintiffs would have prevailed in their lawsuit." FAC ¶ 8.

## II. *Hernandez v. Remco Hydraulics*, No. C 98-3987 SI (N.D. Cal.)

On October 15, 1998, plaintiffs filed *Hernandez, et al. v. Remco Hydraulics, et al.*, No. C 98-3987 SI (N.D. Cal.), against numerous defendants, including Whitman Corporation, Remco Industries and other owners and operators of the Remco site in Willits ("Remco defendants"), and Broin and Mendocino County. The second amended complaint alleged, *inter alia*, that defendant Broin and Mendocino County engaged in a cover-up regarding their son's death. The complaint alleged federal and state claims, including Section 1983 claims for due process and equal protection violations that plaintiffs suffered during the investigation, as well as a state wrongful death claim. On March 3, 2000, this Court dismissed the Section 1983 claims with prejudice, and dismissed the state law claims without prejudice. Andrade Decl., Ex. E.

Plaintiffs appealed, and in a memorandum order filed May 8, 2011, the Ninth Circuit Court of Appeals affirmed. Andrade Decl., Ex. G. With regard to the § 1983 claims, the Ninth Circuit held that plaintiffs had failed to allege an unconstitutional policy or custom, and had failed to allege unconstitutional official conduct. *Id*. at 2. The court also stated,

> In order for the appellants to have a proper claim of unconstitutional denial of access to the courts, they must show that an official coverup "actually rendered all state court remedies ineffective." *Delew v. Wagner*, 143 F.3d 1219, 1222 (9th Cir. 1998) (requiring that party bring an action in state court and fail because of official misconduct before having a claim under § 1983). If the appellants had filed a wrongful death action in state

> court and lost because of the destruction of evidence by various officials, they may have had a colorable claim that their due process rights were violated.

*Id.* at 2-3.

### III. *Hernandez v. Remco Hydraulics et al.*, No. SCUK-CVG 00-83230 (Mendocino County)

On May 1, 2000, plaintiffs filed a lawsuit in Mendocino County Superior Court, *Hernandez et al. v. Remco Hydraulics, Inc, et al.*, No. SCUK-CVG 00-83280. Andrade Decl., Ex. H, I. Plaintiffs alleged, *inter alia*, state constitutional claims against the Mendocino County defendants based on the investigation of their son's death and the alleged cover-up, and a wrongful death claim against the Remco defendants. Andrade Decl. Ex. I at 9-12.

On September 6, 2002, the state trial court granted summary judgment in favor of the Remco defendants on plaintiffs' wrongful death claim based on the statute of limitations. On November 6, 2002, the trial court sustained a demurrer without leave to amend brought by the Mendocino County defendants. Andrade Decl., Ex. J.

Plaintiffs appealed, and on February 14, 2006, the California Court of Appeal issued an opinion affirming the dismissal of the claims against the Mendocino County defendants, and reversing and remanding the summary judgment on the wrongful death claim against the Remco defendants. *Id.*, Ex. L. On the wrongful death claim, the Court of Appeal found that a triable issue of fact existed as to when plaintiffs became aware (or reasonably should have become aware) of their son's cause of death. *Id.* at 12.

On remand, the trial court granted summary judgment in defendants' favor. The court found that Whitman submitted evidence showing that there was a lack of evidence demonstrating chromium was discharged in the creek at a location where it would be present at the plaintiffs' campsite. The court then found,

> [Plaintiffs] failed to produce competent, admissible evidence that there is a triable issue of material fact as to whether Forrest Hernandez was exposed on August 22, 1997 to hexavalent chromium at the Jackson campground and that any hexavalent chromium, which might have been then present at the campground, was discharged by Whitman Corporation to that site generally or through the conduct of any employee or agent. . . . Plaintiffs' contentions of exposure to hexavalent chromium from the Remco site as a

4

> result of the conduct of Whitman Corporation are based on conjecture and speculation rather than on admissible evidence.

*Hernandez v. Whitman Corp.*, 2008 WL 2224255, at *5 (Cal. App. 1 Dist. May. 30, 2008).[2] The state trial court entered judgment on December 4, 2006, and issued notice of the entry of judgment on December 11, 2006. Docket No. 40. On February 2, 2007, plaintiffs filed a notice of appeal. *Id*. In an unpublished opinion filed on May 30, 2008, the California Court of Appeal affirmed. *Hernandez v. Whitman Corp.*, 2008 WL 2224255, at *7-9. The California Supreme Court denied plaintiffs' petition for review, and on August 22, 2008, the California Court of Appeal issued a remittitur.[3] Docket No. 35, Ex. N.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. The question presented by a motion to dismiss is not whether the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer evidence in support of the claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686 (1974), overruled on other grounds by *Davis v. Scherer*, 468 U.S. 183, 104 S. Ct. 3012 (1984).

In answering this question, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). Even if the face of the pleadings suggests that the chance of recovery is remote, the Court must allow the plaintiff to develop the case at this stage of the proceedings. *See United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981). In addition, "[o]n a motion to dismiss, [the court] may take judicial notice of matters . . . outside the pleadings." *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986).

---

[2] The record before the Court does not contain the state court's summary judgment order, and thus the Court cites to the appellate court decision's quotation of the trial court's decision.

[3] In California procedure, a remittitur is analogous to the mandate in federal appellate practice. *See Rare Coin Galleries, Inc. v. A-Mark Coin Co., Inc.*, 202 Cal. App. 3d 330, 335-36 (1988); *Morales v. City of Los Angeles*, 214 F.3d 1151, 1155 n.2 (9th Cir. 2000).

1    If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The
2 Ninth Circuit has repeatedly held that "a district court should grant leave to amend even if no request
3 to amend the pleading was made, unless it determines that the pleading could not possibly be cured by
4 the allegation of other facts." *Lopez v. Smith*, 203 F. 3d 1122, 1130 (9th Cir. 2000) (citations and internal
5 quotation marks omitted).

**DISCUSSION**

8    Defendants move to dismiss plaintiffs' Section 1983 claim on the grounds that (1) the claim is
9 barred by the statute of limitations, (2) barred by res judicata and collateral estoppel, and (3) as to the
10 County, plaintiffs have failed to allege facts showing that Broin's actions were pursuant to a custom or
11 policy. Plaintiffs' opposition brief concedes that they have not stated a claim against the County, and
12 plaintiffs agree to dismissal of the County. *See* Opp'n at 5.

13    Section 1983 claims are governed by the forum state's statute of limitations for personal injury
14 actions. *See Wallace v. Kato*, 549 U.S. 384, 387 (2007); *Azer v. Connell*, 306 F.3d 930, 935 (9th Cir.
15 2002) (citing *Wilson v. Garcia*, 471 U.S. 261 (1985)). While state law determines the statute of
16 limitations period for Section 1983 claims, federal law determines when such a claim accrues. *See Azer*,
17 306 F.3d at 935-36. "Under federal law, a claim accrues when the plaintiff knows or has reason to know
18 of the injury which is the basis of the action." *Id*. at 936 (citing *Morales v. City of Los Angeles*, 214
19 F.3d 1151, 1154 (9th Cir. 2000)).

20    Plaintiffs contend that their claim accrued on August 22, 2008, when the California Court of
21 Appeal issued a remittitur in the wrongful death action, and that their claim in this lawsuit is governed
22 by the two year statute of limitations for personal injury claims contained in California Code of Civil
23 Procedure § 340.3. Defendants contend that plaintiffs' claim accrued on August 22, 1997, the date their
24 son died, and that the claim is governed by the one year statute of limitations for personal injury claims
25 in effect at that time. *See* Cal. Code Civ. Proc. § 340.3 (1997).

6

In *Morales v. City of Los Angeles*, 214 F.3d 1151 (9th Cir 2000), the Ninth Circuit held that where plaintiffs allege a claim of unconstitutional denial of right of access to the courts, the claim accrues for statute of limitations purposes when the plaintiffs lost the prior case in trial court and judgment was entered against them. In *Morales*, the plaintiffs first filed a civil rights lawsuit alleging that police officers wrongfully killed their son. *Id*. at 1152. After the plaintiffs lost that lawsuit, they filed a second civil rights lawsuit alleging that the police officers violated their right to access to the courts by "conspiring to conceal the true nature of the shooting to defeat the [plaintiffs'] first civil rights lawsuit." *Id*. The Ninth Circuit held that the plaintiffs' causes of action "accrued when the alleged police misconduct resulted in judgments being entered against them. At that point, they knew or had reason to know that the alleged misconduct actually caused concrete injury." *Id*. at 1154. Applying California's tolling rules, the court also held that the statute of limitations is tolled during an appeal from the judgment, but that the time between the filing of the judgment and filing of the notice of appeal is not tolled. *Id*. at 1155. "In other words, the limitations period *begins to run* on the date of judgment, is *tolled* from the date the notice of appeal is filed, and *begins to run again* when the state appellate court issues a remittitur." *Id*. (emphasis in original).

Here, the FAC alleges a single claim under Section 1983 for unconstitutional denial of access to the courts. FAC ¶ 8. Plaintiffs allege that they lost their state wrongful death case "because of destruction of evidence by various officials . . . ." *Id*. Defendants argue that plaintiffs' claim accrued at the time of their son's death because plaintiffs have always alleged, beginning with their first federal lawsuit, that defendants covered up the death of their son. However, while plaintiffs have always alleged a cover-up by defendants, the Ninth Circuit has held that "denial-of-access-to-the-courts claims arising from alleged police misconduct . . . are not ripe until the trial court proceedings are concluded adversely to the plaintiffs." *Morales*, 214 F.3d at 1155 (citing *Delew v. Wagner*, 143 F.3d 1219 (9th Cir. 1998); *see also Delew*, 143 F.3d at 1222-23 ("To prevail on their claim, the Delews must demonstrate that the defendants' cover-up violated their right of access to the courts by rendering any available state court remedy ineffective. . . . [B]ecause the Delews' wrongful death action remains

7

pending in state court, it is impossible to determine whether this has in fact occurred. . . . [T]he district court should have recognized the cognizability of the Delews' claims and dismissed their complaint without prejudice . . . [so] the Delews would have the opportunity to re-file their section 1983 action if in fact the defendants' alleged cover-up actually rendered all state court remedies ineffective.").

Defendants note that the Mendocino County defendants were not parties to the appeal of the wrongful death lawsuit, and that the Court of Appeal affirmed the dismissal of the County defendants in an order filed February 14, 2006. In so arguing, defendants misunderstand the nature of plaintiffs' claim in this lawsuit. Plaintiffs allege that the Mendocino County defendants engaged in a cover-up, and it was that cover-up that caused them to lose their wrongful death lawsuit against the Remco defendants. Under *Delew*, plaintiffs' claim of an unconstitutional denial of access to the courts did not become ripe until plaintiffs lost their wrongful death lawsuit against the Remco defendants.[4]

Accordingly, under *Morales* and *Delew*, plaintiffs' claim accrued on December 4, 2006, the date the state trial court entered judgment in favor of defendants (after remand), or potentially on December 11, 2006, the date that plaintiffs state that the notice of entry of judgment was issued. Docket No. 40. Plaintiffs argue that the limitations period was tolled on December 15, 2006, when they filed a motion for a new trial. Plaintiffs state that the trial court denied the motion for a new trial on February 2, 2007, and that the statute of limitations remained tolled because plaintiffs filed a notice of appeal on that date. Plaintiffs agree that the statute of limitations began running again on August 22, 2008 when the California Court of Appeal issued the remittitur.

Plaintiffs correctly note that *Morales* did not address the question of whether the timely filing of a motion for a new trial tolls the statute of limitations. Plaintiffs contend that under the reasoning of

---

[4] Defendants also assert that plaintiffs' claim is barred by the related doctrines of res judicata and collateral estoppel. Under the doctrine of res judicata (also known as the claim preclusion doctrine), "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. . . . Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). Because plaintiffs' denial-of-access-to-the-courts claim was not ripe until the state trial court entered judgment against them in their state wrongful death case, the Court concludes that neither doctrine bars plaintiffs' claim.

8

*Morales*, a claim accrues when the plaintiffs know that they have lost their case in the state trial court, which plaintiffs assert was the date that the state trial court denied their motion for a new trial. Plaintiffs are correct that if the filing of the motion for a new trial tolled the statute of limitations, this lawsuit is timely. If the filing of the motion for a new trial did not toll the statute of limitations, this lawsuit was filed slightly over the two year limitations period. Plaintiffs alternatively argue that the Court should apply equitable tolling.

The Court finds in the absence of any on-point authority regarding the consequence of filing a timely motion for a new trial on the statute of limitations in a case such as this, and in light of plaintiffs' diligence in pursuing their legal remedies, that equitable tolling is appropriate. "The fundamental purpose underlying statutes of limitations is to protect defendants from having to defend stale claims by providing notice in time to prepare a fair defense on the merits. A second policy underlying the statutes is to require plaintiffs to diligently pursue their claims." *Downs v. Dep't of Water & Power*, 58 Cal. App. 4th 1093, 1099-1100 (1997). "Three factors determine whether the statute of limitations is equitably tolled in a particular case: (1) timely notice to defendants in filing the first claim; (2) lack of prejudice to defendants in gathering evidence to defend against the second claim; and (3) good faith and reasonable conduct by plaintiffs in filing the second claim." *Id*. at 1100.

Here, all of these factors weigh in favor of equitable tolling. Defendants have had timely notice of plaintiffs' wrongful death lawsuit, and indeed have been parties to every lawsuit filed by plaintiffs regarding the death of their son. Defendants have long been on notice that plaintiffs have alleged that they engaged in a cover-up, and thus there is no prejudice to defendants in gathering evidence to defend against this claim in this lawsuit. Finally, the record reflects that plaintiffs have attempted to allege a claim of a cover-up since their initial lawsuit in this court, that they followed the Ninth Circuit's guidance by filing the state wrongful death action, and that they promptly filed a motion for a new trial and an appeal of the wrongful death case. This case was filed within two years of the state appellate court's issuance of the remittitur. Under these circumstances, the Court finds that equitable tolling

applies. Accordingly, the Court DENIES defendants' motion to dismiss plaintiffs' claims against defendant Broin.

## CONCLUSION

For the foregoing reasons, the Court hereby GRANTS defendants' motion to dismiss plaintiffs' claims against the County and DENIES defendants' motion to dismiss plaintiffs' claims against defendant Broin. Docket No. 17.

**IT IS SO ORDERED.**

Dated: October 7, 2011

SUSAN ILLSTON
United States District Judge