IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JOHN HERNANDEZ, *et al.*,

    Plaintiffs,

  v.

KEVIN BROIN, *et al.*,

    Defendants.

No. C 11-2397 SI

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

On June 15, 2012, the Court held a hearing on defendant's motion for summary judgment. For the reasons set forth below, the Court GRANTS defendant's motion.

## BACKGROUND

**I.  This lawsuit**

This lawsuit is the latest in a series of lawsuits filed by plaintiffs arising out of the death of their son. The first amended complaint alleges that on August 22, 1997, plaintiffs' son, five year-old Forrest Hernandez, died after ingesting a small amount of water from Muir Mill Creek in Mendocino County. FAC ¶ 1. Plaintiffs allege that their son died because the creek water that he drank was contaminated with toxic chemicals. *Id*. ¶¶ 2-3.

The complaint alleges that defendant Kevin Broin, who was employed by Mendocino County as its sheriff and coroner at the time, "engaged in an unconstitutional coverup of the cause of death of Forrest Hernandez." *Id*. Specifically, plaintiffs allege that Broin and other unnamed individuals (1)

performed an inadequate autopsy and an unauthorized necropsy, and failed to properly document either; (2) ignored plaintiffs' repeated requests to test Forrest's preserved body parts, vomit samples, and water samples from the creek for exposure to toxic chemicals; and (3) destroyed evidence (Forrest's preserved body parts, vomit, and water samples) without notifying the family or ever having conducted proper testing. *Id*. ¶¶ 3-4.

Plaintiffs allege that "another aspect of this coverup was the insistence by Kevin Broin and Does 1-10 that the Plaintiffs were somehow responsible for the death of their son." *Id*. ¶ 5. The FAC alleges that "[d]espite their repeated requests for testing, the only testing conducted by Kevin Broin or his subordinates was to take blood samples from the Plaintiffs themselves on a baseless hypothesis that they were methamphetamine users." *Id*. Plaintiffs allege that this testing was "done to threaten, intimidate and/or coerce them into stopping the Plaintiffs from exercising their rights to petition the government to stop conducting an inadequate investigation and to conduct proper testing for the nature of what poisoned their son." *Id*.

Plaintiffs also allege that defendants refused to investigate "the most obvious source of poisoning – the well-known illegal dumping activities that had been conducted by the Remco plant." *Id*. ¶ 6. The complaint alleges that the Remco plant "was the largest industry in Willits, employing hundreds of workers and discharging huge amounts of hexavalent chromium and solvents and other products containing volatile organic compounds." *Id*. Plaintiffs allege that Broin "was well aware of the existence of Remco and its dumping activities in various portions of the Willits community," and that Broin "refused to look at Remco as a suspect of having poisoned the water, even though he agreed to take water samples." *Id*. The complaint alleges that plaintiffs filed a wrongful death lawsuit against the Remco plant owners, and that plaintiffs lost that lawsuit "[b]ecause of the coverup and evidence destruction." *Id*. ¶ 7.

Plaintiffs filed this lawsuit on August 4, 2010 in Mendocino County Superior Court. *See* Notice of Removal. The first amended complaint alleges one claim pursuant to 42 U.S.C. § 1983 against Broin, the County of Mendocino, and Does 1-10, for unconstitutional denial of access to the courts. The Section 1983 claim alleges that "[i]f the Defendants had not conducted an unconstitutional coverup of the Remco plant's activities, which included the destruction of evidence and refusal to conduct a proper

2

investigation as set forth above, the Plaintiffs would have prevailed in their lawsuit." FAC ¶ 8. Defendants filed a motion to dismiss on May 23, 2011. This Court granted the motion in part by dismissing the County, but denied the request to dismiss Kevin Broin. Thus, only defendant Kevin Broin remains in this lawsuit.

**II.     State lawsuit:  *Hernandez et al. v. Remco Hydraulics et al.*, No. SCUK-CVG 00-83280**

On May 1, 2000, plaintiffs filed a lawsuit in Mendocino County Superior Court, *Hernandez et al. v. Remco Hydraulics, Inc, et al.*, No. SCUK-CVG 00-83280. Andrade Decl., Ex. H, I. Plaintiffs alleged, *inter alia*, state constitutional claims against Mendocino County and Kevin Broin based on the investigation of their son's death and the alleged cover-up, and a wrongful death claim against the Remco defendants. Andrade Decl., Ex. I at 9-12.

On September 6, 2002, the state trial court granted summary judgment in favor of the Remco defendants on plaintiffs' wrongful death claim based on the statute of limitations. On November 6, 2002, the trial court sustained the Mendocino County defendants' demurrer without leave to amend, holding that plaintiffs failed to allege compliance with the Tort Claims Act and that the alleged state constitutional violations did not support a claim for monetary damages. Andrade Decl., Ex. J.

Plaintiffs appealed, and on February 14, 2006, the California Court of Appeal issued an opinion affirming the dismissal of the claims against Mendocino County and Kevin Broin, and reversing and remanding the summary judgment on the wrongful death claim against the Remco defendants. *Id.*, Ex. K. On the wrongful death claim, the Court of Appeal found that a triable issue of fact existed as to when plaintiffs became aware (or reasonably should have become aware) of the cause of their son's death. *Id*. at 12.

On remand, the trial court granted summary judgment in the Remco defendants' favor. The court found that Whitman Corporation (Remco's successor) had submitted evidence showing that there was a lack of evidence demonstrating chromium was discharged in the creek at a location where it would be present at the plaintiffs' campsite. The court then found,

> [Plaintiffs] failed to produce competent, admissible evidence that there is a triable issue of material fact as to whether Forrest Hernandez was exposed on August 22, 1997 to hexavalent chromium at the Jackson campground and that any hexavalent chromium, which might have been then present at the campground, was discharged by Whitman

3

> Corporation to that site generally or through the conduct of any employee or agent. . . . Plaintiffs' contentions of exposure to hexavalent chromium from the Remco site as a result of the conduct of Whitman Corporation are based on conjecture and speculation rather than on admissible evidence.

*Hernandez v. Whitman Corp.*, 2008 WL 2224255, at *5 (Cal. App. 1 Dist. May. 30, 2008).[1] The state trial court entered judgment on December 4, 2006, and issued notice of the entry of judgment on December 11, 2006. Docket No. 40. On February 2, 2007, plaintiffs filed a notice of appeal. *Id.* In an unpublished opinion filed on May 30, 2008, the California Court of Appeal affirmed. *Hernandez v. Whitman Corp.*, 2008 WL 2224255, at *7-9. The California Supreme Court denied plaintiffs' petition for review, and on August 22, 2008, the California Court of Appeal issued a remittitur.[2] Docket No. 35, Ex. N.

**LEGAL STANDARD**

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325.

Once the moving party has met its burden, the burden shifts to the non-moving party to "set out 'specific facts showing a genuine issue for trial.'" *Id.* at 324 (quoting then Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there

---

[1] The record before this Court does not contain the state court's summary judgment order, and thus the Court cites to the appellate court decision's quotation of the trial court's decision.

[2] In California procedure, a remittitur is analogous to the mandate in federal appellate practice. *See Rare Coin Galleries, Inc. v. A-Mark Coin Co., Inc.*, 202 Cal. App. 3d 330, 335-36 (1988); Morales v. Q *Los Angeles*, 214 F.3d 1151, 1155 n.2 (9th Cir. 2000).

4

1  must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v.*
2  *Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

3  In deciding a summary judgment motion, the Court must view the evidence in the light most
4  favorable to the non-moving party and draw all justifiable inferences in its favor. *Id*. at 255.
5  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from
6  the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." *Id*.
7  However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise
8  genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d
9  730, 738 (9th Cir. 1979). The evidence the parties present must be admissible. Fed. R. Civ. P. 56(c).

**DISCUSSION**

Plaintiffs allege that defendant Broin violated their constitutional right of access to the courts. Plaintiffs allege that defendant Broin hid key facts and destroyed evidence (water samples and Forrest's preserved body parts) that would have formed the basis of their claims for redress. Specifically, plaintiffs assert that defendant engaged in a cover-up by doing the following: (1) failing to test for toxins the water sample that Sheriff deputies took from the site where Forrest drank water, (2) refusing to accept a sample of Forrest's vomit, (3) failing to take samples from the creek and failing to test for chromium despite plaintiffs' request on September 1997 to do so, (4) destroying "samples that could have proved helpful," and (5) having "an autopsy report written up designed to cover up the actual cause of death." Pls.' Opp'n at 8-9. Plaintiffs claim that they relied on defendant to conduct a reasonable investigation into their son's death, and that defendant's "cursory investigation" and "actions designed to conceal evidence," made it "more difficult to prove that plaintiff was a victim of Remco debris." *Id*. at 10:1-20. Additionally, plaintiffs claim that defendant's actions caused plaintiffs' delay in filing a tort claim against the Mendocino County defendants.

Defendant moves for summary judgment on plaintiffs' Section 1983 claim on the ground that plaintiffs cannot show that defendant denied plaintiffs' right of access to the state courts. Defendant contends that plaintiffs' own exhibits demonstrate that (1) plaintiffs "were fully aware of all of the 'facts'. . . [and] had every opportunity to protect their interest" and (2) defendant did not delay

5

1 plaintiffs' own investigation as plaintiffs collected their own water samples at the camp site on the day
2 of their son's death, collected samples of their son's vomit and more water samples on the day following
3 their son's death, and shortly thereafter, had the full report from the defendant regarding their son's
4 cause of death.[3] *See* Def.'s Reply at 4-6.

### I. Plaintiffs' wrongful death claim against Remco

To decide whether a plaintiff's fundamental right of access to the courts has been violated, "a court must ascertain whether the abuse occurred pre-filing," and if so, "whether plaintiff can show that defendant's actions foreclosed [plaintiff] from filing suit in state court or rendered ineffective any state court remedy [plaintiff] previously may have had." *Swekel v. City of River Rouge*, 119 F.3d 1259, 1263-64 (6th Cir. 1997). If a defendant's actions effectively cover up evidence and "this action renders a plaintiff's state court remedy ineffective, [then defendant has] violated [plaintiff's] right of access to the courts." *Id*. at 1262. Such actions include shielding "from the public and the victim's family key facts which would form the basis of the family's claims for redress." *Id*. at 1262 (citing *Bell v. City of Milwaukee*, 746 F.2d 1205, 1261 (7th Cir. 1984)). Moreover, a defendant's conduct that delays a plaintiff's own investigation "would substantially prejudice [plaintiff's] ability to recover in state court. Delay alone causes 'stale evidence and the fading of material facts in the minds of potential witnesses.'" *Id*. at 1264 (citing *Ryland v. Shapiro*, 708 F.2d 967, 975 (5th Cir. 1983)). However, "[a] plaintiff cannot merely guess that a state court remedy will be ineffective because of a defendant's actions. Rather, the plaintiff must present evidence that the defendant['s] actions actually rendered any available state court remedy ineffective." *Id*. at 1264.

Defendant argues that the record shows that defendant's actions did not render any state court remedies ineffective. Defendant contends that "[p]laintiffs 'knew' of their theory of their son's death almost immediately after his death. Furthermore, [plaintiffs] had every opportunity to present this information to the state court." Def.'s Reply at 6:10-12. When a plaintiff knows the identity of the

---

[3] The Court notes defendant's objection to the extension granted for plaintiffs to file an opposition brief by May 11, 2012. The court also notes defendant's motion to strike plaintiffs' submissions filed after May 11, 2012. However, in the interest of deciding this action on its merits, the Court denies defendant's motion to strike plaintiffs' submissions.

6

1 defendant and has all the relevant facts at plaintiff's disposal, then defendant has not denied plaintiff
2 access to the courts. *Swekel*, 119 F.3d at 1263 (citing *Joyce v. Mavromatis*, 783 F.2d 56, 57 (6th Cir.
3 1986)). In *Joyce*, the plaintiffs filed a Section 1983 claim alleging that the police officers acted to defeat
4 the plaintiffs' state court suit. The court dismissed the claim because plaintiffs had a pending state suit
5 and could have brought the allegations to the attention of the state court judge since plaintiffs "knew
6 the identity of the defendant and had all of the requisite facts to file suit." *Id*.; *see also Thompson v.*
7 *Boggs*, 33 F.3d 847, 852-53 (7th Cir. 1994) (holding that defendant's action of omitting facts from a
8 police report did not deny plaintiff access to the courts because plaintiff was present at the scene, knew
9 all of the facts, and had sufficient facts to promptly file a lawsuit). Here, defendant argues that *Joyce*
10 is analogous because plaintiffs knew defendant Broin's identity and the record show that plaintiffs had
11 all the relevant facts at their disposal.

12 The Court agrees with defendant that the record does not support plaintiffs' claim that
13 defendant's actions denied plaintiffs access to state courts. While plaintiffs argue that defendant did not
14 test the creek water sample for toxins, on the day of Forrest's death Sheriff deputies accompanied
15 plaintiffs to the site where Forrest drank water and plaintiffs collected their own water sample. Docket
16 No. 65, Ex. 4 of Leslie Scales' Dep. at 69:7-10, 71:5-11 (Scales Dep.). Docket No. 64, Ex. 3 of John
17 Hernandez's Dep. at 186:9-18,188-189 (Hernandez Dep.). The next day, plaintiffs returned to the site
18 to collect their son's vomit and more water samples. Scales Dep. at 69:17-25. Plaintiffs suspected that
19 Forrest's death may have been caused by drinking the water from the creek. Scales Dep. at 68:2-7.
20 Plaintiffs collected their own water samples from the creek, and "[w]ithin 30 days from the boy's death,
21 the plaintiffs had learned about the existence of Remco, that [Remco] had generated hexavalent
22 chromium that had gone off-site." Pls.' Opp'n at 4:15-16.

23 Plaintiffs argue that defendant "should have taken immediate steps to sample for any toxins that
24 might reasonably be found in the area." Pls.' Opp'n at 3:16-17. Plaintiffs also argue that the vomit
25 sample they tested was abnormally high in chromium and "this finding was a clue that there was
26 abnormally high chromium in the area, and a new water sample could have been promptly conducted
27 from the creek site to obtain a finding of hexavalent chromium." Pls.' Opp'n at 4:6-8. Moreover,
28 plaintiffs state "[t]here was also testimony that there had been dumping of waste water into the creek

7

1 days on a weekly basis during 1997." *Id*. at 4:9-10. However, even if defendant should have obtained
2 and tested new samples for toxins, this alleged failure did not prevent plaintiffs from conducting their
3 own tests. Plaintiffs formed their theory of their son's death early on, plaintiffs obtained and tested their
4 own water and vomit samples, and there is no evidence that defendant kept plaintiffs from obtaining or
5 testing more samples.[4] *See Thompson*, 33 F.3d at 852-53; *Joyce*, 783 F.2d at 56.

6 Plaintiffs knew their son's autopsy report was completed in three days, and the cause of death
7 resolved in a month. Plaintiffs argue that "the withholding of the autopsy report for six months was
8 highly significant." Pls.' Opp'n at 9:18. However, the record shows that plaintiffs received the autopsy
9 report on the Wednesday following Forrest's death. Scales Dep. at 77-78, 83:1-7. Even if plaintiffs
10 received the autopsy report six months after it was completed, plaintiffs knew the autopsy report was
11 completed in three days and could have taken action to get the report as soon as the report was
12 completed.

13 Plaintiffs also allege that defendant destroyed evidence of water samples and body parts that
14 could have formed the basis of plaintiffs' claim. FAC ¶¶ 3-4. Plaintiffs cite Broin's deposition in which
15 Broin testified that aside from collecting specimens of Forrest's organs, the remaining organs were
16 returned to the body. Docket No. 63, Ex. 2 at 51:13 - 53:13. The specimens were kept for one year and
17 during a routine purge, another chief deputy coroner ordered the specimens destroyed. *Id*. at 52:16-53.
18 However, even if defendant should have prevented the destruction of the water samples and organ
19 specimens, plaintiffs had access to their own water samples and had at least one year to take action and
20 do their own testing of the specimens. At the June 15, 2012 hearing, plaintiffs alleged that the record
21 does not show that defendant gave plaintiffs access to the specimens. However, the record demonstrates
22 that plaintiff Hernandez had access to the organs and "was trying to get a second autopsy done on
23 [Forrest]. I had him frozen for two weeks, I didn't want to bury him, I wanted to get a real autopsy

---

[4] Plaintiffs alleged in state court that they gave the vomit and water samples to a testing company on April 2, 1998. On May 19, 1998, plaintiffs received results that the vomit was "abnormally high in chromium." Pls.' Opp'n at 4:1-2; *Hernandez v. Whitman Corp.*, A108245, 2006 WL 331205, at *12 (Cal. Ct. App. Feb. 14, 2006). Dr. Levin states that hexavalent chromium breaks down rapidly to trivalent chromium. Levin Decl., Ex. 1 at 16. However, the record only refer to the chromium found in the vomit as "chromium," not hexavalent or trivalent chromium. In any event, plaintiffs submitted the vomit tests to the state courts in support of their wrongful death claim.

8

1 done. So I couldn't find an autopsy person, doctor, to do it. So I called the toxic hotline people up."
2 Hernandez Dep. at 194:10-15.

3 Accordingly, the Court finds that defendant met his burden of demonstrating that there is an
4 absence of evidence to support plaintiffs' case. Moreover, the Court finds that plaintiffs did not meet
5 their burden of demonstrating sufficient, admissible evidence to show a genuine issue for trial as to
6 whether defendant hid key facts and engaged in a cover-up, and as to whether plaintiffs made any effort
7 in state court to address defendant's alleged misconduct.[5]

## II. Plaintiffs' constitutional claims against the Mendocino County defendants

Plaintiffs' claims against the Mendocino County defendants were dismissed because the state trial and appellate courts found that the Torts Claims Act barred plaintiffs' complaint because "no suit for 'money or damages' may be brought against a public entity until a written claim has been presented to the public entity and the claim either has been acted upon or is deemed to have been rejected. A suit for 'money or damages' includes all actions where the plaintiff is seeking monetary relief, regardless whether the action is founded in ""'tort, contract or some other theory.'"" [internal citations omitted] *Hart v. Cnty of Alameda, supra*, 76 Cal. App. 4th at 778. Claims "relating to a cause of action for death or for injury to person" must be brought within six months after the cause of action accrues. Cal. Gov't Code § 911.2. Claims "relating to any other cause of action" must be brought within one year after the cause of action accrues. *Id*. An application for leave to present a claim later than the six-month period must also be presented within one year after the cause of action accrues. Cal. Gov't Code § 911.4.

Plaintiffs assert that they did not file a tort claim within six months of Forrest's death because they relied on defendant Broin's investigation. Plaintiffs argue that they repeatedly asked defendant to conduct sampling and testing since the day of their son's death, and that within a week of their son's death plaintiffs were unwilling to give defendant a sample of their son's vomit because defendant did not test any of the water samples for toxins. As discussed in the prior section, however, plaintiffs knew within 30 days of their son's death that Remco generated hexavalent chromium that had gone off site.

---

[5] During the June 15, 2012 hearing, plaintiffs cited Exhibit 5 at pages 49 and 62 of their Opposition to demonstrate that plaintiffs did not have all of the relevant facts. The Court reviewed the record and agrees with defendant that there is a lack of evidence supporting plaintiffs' assertion.

9

1  Plaintiffs knew the autopsy report was completed in three days, and the cause of death was resolved in
2  a month.[6]

3  The Court agrees with defendant that there is a lack of evidence that defendant's alleged
4  misconduct led to plaintiffs' delay in filing a tort claim against defendant Broin. Even if plaintiffs'
5  allegations against defendant are true, plaintiffs' own testimony shows that plaintiffs formed their theory
6  of their son's death early on and had sufficient and relevant information to file a tort claim.
7  Additionally, by refusing to provide the vomit sample to defendant, plaintiffs demonstrated that they
8  essentially stopped relying on defendant. Instead, plaintiffs waited more than a year after their son's
9  death to apply to file a late claim, which the Mendocino County Board of Supervisors ("County")
10 denied. The County advised plaintiffs that filing a court action on the matter required plaintiffs to first
11 petition the appropriate court for relief from the claim presentation. However, plaintiffs did not pursue
12 the remedies provided for a claimant whose application for leave to present a late claim is rejected. In
13 fact, plaintiffs waited until May 2000, long after the Tort Claims Act deadline, to take action in state
14 court. Andrade Decl., Ex. K. As such, the Court agrees that the evidence does not demonstrate that
15 defendant's actions prevented plaintiffs from filing a timely claim, and finds that plaintiffs have failed
16 to submit sufficient evidence to show otherwise.

## CONCLUSION

19 For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendant's
20 motion for summary judgment. Docket No. 48.

22 **IT IS SO ORDERED.**

24 Dated: June 19, 2012

SUSAN ILLSTON
UNITED STATES DISTRICT JUDGE

---

[6] Plaintiffs assert that defendant did not release their son's autopsy report until six months after his death. However, the record reflects that plaintiffs received the autopsy report on the Wednesday following Forrest's death. Scales Dep. at 77-78, 83:1-7.

10